706 P.2d 100

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Evan BRONKEMA, Defendant-Appellant.**

**No. 15262.**

Court of Appeals of Idaho.

Sept. 4, 1985.

Alan E. Trimming and Phillip O. Burns, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., A. René Fitzpatrick, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

This is an appeal from a district court's judgment of conviction on two counts of robbery. Appellant contends that the district court erroneously denied his motion to dismiss based on Ada County's failure to comply with the 180-day speedy trial provision of the Interstate Agreement on Detainers (herein "the Agreement"). I.C. § 19–5001(c)(1). We hold that the speedy trial provision of the Agreement was not violated and we affirm the judgment of conviction.

Evan Bronkema escaped from a work release program while incarcerated at a Washington state correctional institution in Seattle on May 8, 1982. Bronkema was serving time for second degree robbery at the time of his escape. Shortly after his escape, Bronkema stole an automobile and drove to Coeur d'Alene, Idaho, where he allegedly committed a robbery. On May 13, 1982, Bronkema committed two robberies in Boise. Five days later Bronkema was apprehended for alleged robberies committed in Tigard, Oregon. On May 25,

1982, Ada County[1] filed a complaint against Bronkema for the robberies committed in Boise. That same day Oregon notified Ada County of Bronkema's arrest and also indicated there was an outstanding "hold" on Bronkema by Washington. Nevertheless, Ada County initiated a detainer and extradition process by mailing certified copies of the complaint and warrant to Oregon on May 26, 1982.

On June 2, 1982, Bronkema waived extradition on the Washington "hold" and was returned to that state. Ada County was notified that its detainer and extradition proceedings with Oregon were dismissed and that it would have to refile with the appropriate Washington institution. On June 16, 1982, an unidentified employee of the Ada County Sheriff's office received a telephone call from an unidentified official at the Washington Department of Corrections stating that Bronkema was in their custody at Olympia and that they were aware of Ada County's interest in Bronkema. The caller further stated that Ada County would be notified, after Washington sentenced Bronkema on the escape charge, where to file a detainer.

On August 4, 1982, Bronkema was incarcerated at a Washington institution in Walla Walla to serve out the remainder of his time. On August 19, 1982, a detainer was filed with the institution at Walla Walla by Kootenai County, Idaho, against Bronkema for the alleged robbery in Coeur d'Alene. On the following day, August 20, 1982, Bronkema made demand on Kootenai County, pursuant to the provisions of the Agreement, to bring him to trial on the Kootenai County charges within 180 days of his request.[2]

On November 16, 1982, Ada County was notified by telephone that Bronkema was at the Walla Walla institution and that Ada County's detainer should be filed with that institution. Ada County sent certified copies of the warrant and complaint that day. Bronkema subsequently demanded speedy resolution of the Ada County charges and Ada County was notified of his demand on November 22, 1982. By April 6, 1983, Bronkema was sent to Idaho, received a preliminary hearing and was arraigned in Boise. On April 26 he moved to dismiss the Ada County charges on grounds he had not been brought to trial within 180 days of his request for disposition of "all untried indictments, information or complaints on the basis of which detainers had been lodged against the prisoner ...." I.C. § 19–5001(c)(4). Essentially, Bronkema contends: (1) that the telephone conversation of June 16, 1982, between Washington and the Ada County Sheriff's office constituted a detainer lodged against Bronkema; and (2) that Bronkema's demand directed to Kootenai County on August 20, 1982, also operated as a demand on the Ada County charges, thus triggering the 180-day speedy trial provision of the Agreement. The district court denied the motion holding that the telephone conversation of June 16 did not constitute a "detainer."

## I

We agree with the district court that, as held by the United States Supreme Court, the provisions of the Agreement "are triggered only when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner ...." *United States v. Mauro*, 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978). *See* I.C. § 19–5001(c)(1). Therefore, the success of Bronkema's argument rests on the premise that the June 16, 1982, telephone conversation between Washington and Ada County constituted a detainer under the Agreement.[3]

---

1. In this opinion, for convenience, we refer simply to Ada County meaning either prosecuting or law enforcement officials.

2. The Kootenai County detainer was later dismissed for reasons undisclosed in the record before us.

3. Clearly, a prisoner's demand is inoperative with regard to the 180-day speedy trial provision absent the lodging of a detainer against him. The speedy disposition demand is effective only as to "any untried indictment, information or complaint *on the basis of which a detainer has*

The term "detainer" is not specifically defined in the Agreement. Therefore, we must look to sources outside the language of the Agreement for a definition of that term. In so doing we note that "[t]he Agreement is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman v. Nash,* — U.S. —, —, 105 S.Ct. 3401, 87 L.Ed.2d 5097 (1985), *citing Cuyler v. Adams,* 449 U.S. 433, 442, 101 S.Ct. 703, 708–709, 66 L.Ed.2d 641 (1981). We take, then, as our starting point federal case law interpreting the Agreement.

The United States Supreme Court has stated: "A detainer is *a request filed* by a criminal justice agency with the institution in which the prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash,* — U.S. at —, 105 S.Ct. at 3403 (emphasis added). *Accord United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978) *citing* and *quoting* H.R.Rep. No. 91–1018, p. 2 (1970); S.Rep. No. 91–1356, p. 2 (1970), U.S.Code & Admin.News 1970, pp. 4864, 4865 ("[a] detainer is *a notification filed* with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction") (emphasis added). The United States Supreme Court in *Carchman* also noted that the drafters, in commenting on the Agreement, stated: "A detainer may be defined as *a warrant filed* against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer." *Carchman v. Nash,* — U.S. at —, 105 S.Ct. at 3407, *citing* and *quoting* COUNCIL OF STATE GOVERNMENTS, SUGGESTED STATE LEGISLATION, PROGRAM FOR 1957, at 74 (1956) (emphasis added).

■ Based on the foregoing, we hold that the term "detainer" as used in the

*been lodged* against the prisoner ...." I.C.

Agreement, I.C. § 19–5001, and as construed by the United States Supreme Court entails some form of *written* communication *initiated by the receiving state* (in this case Idaho) which is filed or lodged with the custodial or sending state (in this case Washington) requesting the sending state to notify the receiving state of the prisoner's imminent release from custody, or to hold the prisoner after his release for the receiving state. Therefore, we hold that the telephone conversation of June 16, 1982, an *oral* communication, *initiated by the sending state,* Washington, was not a detainer as we define that term.

■ Contrary to Bronkema's contention, we do not feel that a requirement that the detainer be a written document violates the intent of the Agreement. Indeed, we find that such a requirement furthers the stated purpose of the Agreement. "[I]t is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such [outstanding] charges [against the prisoner] ...." I.C. § 19–5001(a).

Orderly disposition of untried charges against a prisoner is rendered more difficult if an oral communication is permitted to constitute a detainer. In the first instance, such a communication would not permit, in most cases, the official having custody of the prisoner to "promptly inform [the prisoner] of the source and *contents* of any detainer lodged against him," as required by the Agreement. I.C. § 19–5001(c)(3) (emphasis added). It would be very difficult, absent reduction of the oral communication to writing, to accurately convey the contents of the detainer to the prisoner, i.e., the charges or indictments upon which it is based.

And in the final instance, an oral communication does not provide certainty or permit objective verification of a detainer and its bases by the sending state. In this regard it is significant to note the findings of the district court below. They clearly show that neither party to the June 16,

§ 19–5001(c)(1).

1982, telephone call considered the call to be a detainer. Under such circumstances it is highly unlikely that a prisoner will be expeditiously and accurately informed of charges pending in another state. Indeed, were a sending state to act upon such a communication and treat the prisoner as if a detainer had been filed, the sending state would arguably be engaging in the very activity which the Agreement was designed to avoid.[4] The sending state should not be placed in the position of having to infer intent on the part of the receiving state to file the detainer from uncertain oral communications. To hold otherwise could result in denial of important rehabilitative benefits to the prisoner based on the mere inference that another state had a prosecutorial interest in the prisoner. *See, e.g., United States v. Mauro*, 436 U.S. at 359, 98 S.Ct. at 1846–1847.

Finally, Bronkema argues that the Agreement should be liberally construed to effectuate its purposes. I.C. § 19–5001(i). Relying on the liberal construction rationale of *Mauro*, Bronkema argues that the single purpose of a detainer is notification to the sending state of the receiving state's interest in prosecuting a prisoner held by the sending state. *United States v. Mauro*, 436 U.S. at 358, 98 S.Ct. at 1846. We think this interpretation misconstrues the rationale of Mauro. As aptly stated by the dissent in *Carchman* (which argued for a liberal construction of the Agreement under the facts of that case): *"Mauro's* rationale does not require that the terms of the Agreement be thrown to the winds whenever an inmate comes up with a plausible policy argument for the Agreement's application ...." *Carchman,* —— U.S. at ——, 105 S.Ct. at 3415 (Stevens, J., dissenting).

■ Our view is supported by a recent decision out of the Fourth Circuit which rejects the very proposition that appellant urges upon us here, i.e., that once a sending state has knowledge of a receiving state's interest in a prisoner, a "detainer" has been filed against that prisoner by the receiving state. In *United States v. Bamman*, 737 F.2d 413 (4th Cir.1984) the defendants alleged that the *knowledge* of a federal investigation into their counterfeiting operation at a state correctional institution resulted in their transfer to another correctional institution and ultimate transfer to federal officials for trial. This imputed knowledge, defendants argued, constituted notice to the state sufficient to make the federal action the equivalent of the filing of a detainer. The Fourth Circuit rejected this contention holding that mere knowledge of another state's interest in a prisoner—in *Bamman* the interest being an ongoing criminal investigation—did not satisfy the "notification filed" required of the definition of "detainer." *United States v. Bamman*, 737 F.2d at 415. *See also* definition of detainer, *ante.* Thus, in the present case, even though Washington Corrections officials had knowledge of Ada County's interest in prosecuting Bronkema at the time they took possession of him from Oregon such knowledge cannot be said to constitute a "detainer."

## II

Since we hold that the June 16, 1982, oral communication was not a "detainer" under the Agreement, we do not reach the issue of whether or not Bronkema's demand of August 20, 1982, in response to the Kootenai County detainer, would have also operated as demand for a speedy trial on the

---

**4.** Two of the stated goals of the Agreement were: "(1) definitive resolution of · potential terms of incarceration so that prisoners and prison administrators can know with certainty when a prisoner is likely to be released," and "(2) speedy disposition of detainers to insure that those filed for frivolous reasons do not linger ...." *Carchman v. Nash,* —— U.S. at ——, 105 S.Ct. at 3412 (Stevens, J., dissenting). It is deemed important under the Agreement

that a prisoner know of those detainers filed against him so he can take appropriate action. Once a detainer is filed the prisoner is often denied access to important rehabilitative programs. If a detainer "suggests a possibility of additional incarceration ... it is considered as an additional factor in determining the inmate's security level and programming options." *Id.* at ——, n. 6, 105 S.Ct. at 3413, n. 6 (Stevens, J., dissenting).

Ada County charges, had a detainer been filed by Ada County as of that date.

The judgment of the district court is affirmed.

WALTERS, C.J., and BURNETT, J., concur.