NICHOLAS THEIS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 36616

September 17, 2001                                    30 P.3d 1140

---

*Michael R. Specchio,* Public Defender, and *Cheryl D. Bond,* Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

Before SHEARING, AGOSTI and ROSE, JJ.

## OPINION

*Per Curiam:*

### SUMMARY

In this case, we must determine what constitutes a valid "detainer" for purposes of the Interstate Agreement on Detainers (the "Agreement"), which Nevada has codified at NRS 178.620. As it pertains to Nicholas Theis's case, we must determine whether a detainer was lodged when either: (1) Washoe County recorded the existence of a complaint against Theis in the National Crime Information Center ("NCIC") database; or (2) Washoe County telephoned the state in which Theis was incarcerated to ask if it could be added to an existing detainer filed by another Nevada county. The district court below found that neither event constituted a detainer.

We conclude that in order to best effectuate the purposes of the Agreement, a detainer must be a written request filed by a criminal justice agency with the particular institution in which a prisoner is incarcerated, specifically asking that the prisoner be held for the agency or that the agency be advised when the prisoner's release is imminent. Accordingly, we affirm the district court's conclusion that neither the NCIC entry nor the phone call was sufficient to constitute a detainer for purposes of the Agreement.

### FACTS

In early 1998, Nicholas Theis committed armed robberies in the Nevada counties of Elko and Washoe and in the State of Idaho. Idaho eventually caught and convicted Theis and imprisoned him in the Idaho State Correctional Institution.

When Washoe County filed a complaint against Theis in February of 1998, it entered this fact into the NCIC database. Elko County then learned of Theis's incarceration in Idaho and lodged a formal written detainer for him with the Idaho prison.

On February 25, 1999, Theis sent Elko County a "request for final disposition of detainer" requesting "final disposition of the detainer lodged against [him]" pursuant to the provisions of the Agreement and which affected all outstanding Nevada complaints "on the basis of which a detainer has been lodged."

The extradition officer for Washoe County testified that in March 1999 she became aware of the Elko County detainer and had been asked by the Washoe County district attorney to have Washoe County added to the Elko County detainer. The extradi-

tion officer contacted the Idaho prison by telephone to inform officials there that Washoe County also intended to try Theis. She also inquired as to whether a formal written detainer would be necessary. The Idaho officials apparently informed the Washoe County officer that no written detainer would be necessary and that Washoe County would simply be added to the Elko County detainer. The Idaho officials, however, never made the addition, but did inform Theis of Washoe County's request in a written notice. Thus, it appears that the extent of Washoe County's involvement at that time was the NCIC entry and the extradition officer's phone call sometime in March 1999.

In August of 1999, Theis was extradited to Elko County and convicted for armed robbery. He was then returned to Idaho without ever being tried in Washoe County.

Theis was eventually transferred to Washoe County in early 2000. It is unknown whether Theis was transferred pursuant to a valid detainer filed later or as a courtesy from Idaho. Washoe County then charged Theis for his armed robbery in Reno and moved forward with its prosecution.

Theis moved to have the Washoe County charges dismissed for failing to have been brought within 180 days of his February 25, 1999, request for final disposition—an available remedy under the Agreement. Theis argued that Washoe County had filed a detainer for purposes of the Agreement on either: (1) the day it entered information about its complaint against Theis in the NCIC database; or (2) the day it called Idaho by telephone requesting that Washoe County be added to Elko County's detainer.

The district court conducted a hearing on the matter and denied the motion to dismiss, concluding that no evidence was presented to conclusively establish that Washoe County had in fact ever lodged a detainer against Theis. Theis eventually entered a guilty plea for the Washoe County charges, but reserved the right to appeal the district court's denial of his motion to dismiss. Theis now appeals.

## DISCUSSION

The Agreement is codified at NRS 178.620 and contains no express definition of a "detainer." Article I of NRS 178.620 outlines the basic policy of the Agreement, which is to encourage the efficient disposition of outstanding charges against prisoners, thereby facilitating more effective rehabilitation:

> [D]etainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment

and rehabilitation. Accordingly, . . . the purpose of this agreement [is] to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, information or complaints.

Also relevant to this appeal are the following provisions of Article III. First, NRS 178.620, Article III(a) requires prosecutors to bring all pending charges to trial within 180 days from the prisoner's request for final disposition:

> *Whenever* a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment *there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and *his request for a final disposition to be made of the indictment, information or complaint . . . .*[1]

NRS 178.620, Article III(c) further provides that the warden having custody of the prisoner must ''promptly inform him'' of the contents of any detainer lodged against him and his right to request a final disposition of that detainer.

Finally, NRS 178.620, Article III(d) provides that the request for final disposition extends to all untried charges in the state ''on the basis of which detainers have been lodged'' and requires dismissal of charges with prejudice if the Agreement is violated:

> Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. . . . *If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any fur-*

---

[1] Emphasis added.

*ther force or effect, and the court shall enter an order dismissing the same with prejudice.*[2]

Theis contends that the district court erred in concluding that there was no proof that a detainer had ever been lodged. Instead, Theis argues that either the input of his name into the NCIC database or the phone call by Washoe County to have him included on the Elko County detainer were sufficient to prove the existence of a detainer for purposes of the Agreement.

The State, on the other hand, contends that a detainer must be a written notice, generated by a criminal justice agency, directed to and received by the foreign prison, requesting that the prisoner be held for the agency or that the agency be advised of the prisoner's imminent release. To resolve the issue, we must determine what minimal requisites amount to a detainer for purposes of the Agreement.

Our previous case law has only briefly discussed the definition of a "detainer" under the Agreement. In our 1983 decision in *Housewright v. Lefrak,*[3] we stated:

> A detainer is simply an *informal notice of charges pending in another jurisdiction,* and is not a request that the state in which the prisoner is incarcerated do any act or effect any transfer of the prisoner. As such, a detainer may be filed by a prosecuting or law enforcement officer, without involvement or approval of the executive authority of the state seeking custody.[4]

*Housewright,* however, does not answer the issue presently before us.. Although Theis cites *Housewright* and the reference to informality as support for his argument, *Housewright* addressed the particular issue of whether gubernatorial approval was necessary before the State could file a detainer for purposes of the Agreement.[5] Because we were not concerned with the level of formality necessary to constitute a valid detainer in *Housewright,* it is not dispositive of Theis's case. Moreover, our statement that a detainer is "informal" does not answer the question of whether entry into the NCIC computer or a phone call to the sending state's prison is sufficient to trigger the provisions of the Agreement. Indeed, the "informality" referred to addressed the

---

[2]Emphasis added.

[3]99 Nev. 684, 687-88, 669 P.2d 711, 713 (1983).

[4]Emphasis added.

[5]99 Nev. at 687, 669 P.2d at 713.

content of the request, not the package containing it.[6] Accordingly, we must turn to more traditional methods of statutory interpretation to resolve the matter before us.

The Agreement is a congressionally sanctioned interstate compact falling within the scope of the Compact Clause of the United States Constitution.[7] Accordingly, the Agreement is federal law subject to federal construction. Therefore, we will defer to the United States Supreme Court's interpretation of the Agreement before ourselves construing its language.[8]

In the 1993 decision of *Fex v. Michigan*,[9] the United States Supreme Court offered its most recent definition of a "detainer" under the Agreement: "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent."

The *Fex* definition is determinative of Theis's argument with respect to the NCIC database entry. Because the NCIC entry merely informed other agencies of the existence of a warrant against Theis in a nationwide database, it does not meet the *Fex* requirements for a detainer. The entry was not specifically filed "with the institution in which a prisoner is incarcerated" and did not substantively request "that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent."[10] But it appears that neither the United States Supreme Court, nor any other federal court, has addressed whether an oral communication can constitute a detainer.[11] Accordingly, we must ourselves construe the Agreement to determine whether a detainer may be orally communicated or whether it requires a written request.

When construing a statute, we first inquire whether an ambi-

---

[6]For this reason, we also reject Theis's reliance on the footnote in *United States v. Mauro*, 436 U.S. 340, 358 n.25 (1978), which refers to detainers as "informal" aids in interstate and intrastate criminal administration.

[7]U.S. Const. art. I, § 10, cl. 3; *see also Cuyler v. Adams*, 449 U.S. 433, 438-42 (1981) (holding that the Agreement is an interstate compact under the Compact Clause).

[8]*Cuyler*, 449 U.S. at 438-40 (holding that the Agreement is federal law subject to federal construction).

[9]507 U.S. 43, 44 (1993).

[10]*Id.; see also People v. Shue*, 377 N.W.2d 839, 843 (Mich. Ct. App. 1985) (holding that entry of a warrant into the Law Enforcement Information Network was not a detainer within the scope of the Agreement).

[11]We note, however, that the *Fex* definition refers to a detainer being "filed," a term which also suggests a writing, but is not clearly dispositive of a writing requirement.

guity exists in the language of the statute. If the words of the statute have a definite and ordinary meaning, this court will not look beyond the plain language of the statute, unless it is clear that this meaning was not intended.[12]

If a statute is ambiguous, we then focus on the intent of the legislative body enacting it, which is discernible through an examination of "the context and spirit of the statute in question, together with the subject matter and policy involved."[13] Our interpretation "should be in line with what reason and public policy would indicate the [legislative body] intended, and should avoid absurd results."[14]

As noted above, the Agreement itself contains no definition of the word "detainer." The State notes, however, that Article III(a) of the Agreement applies to complaints "on the basis of which a detainer has been lodged." In light of the use of the term "lodged," the State contends that the plain language of the Agreement indicates that a detainer must be in writing. But the State's reasoning is unconvincing because the relevant definition of "lodge" is: "to lay (as a complaint) before a proper authority,"[15] an action that does not by definition require a writing. For instance, to "lodge" an objection at trial does not require one to submit a writing to the court.

The State also contends that the definition of "detainer" contained in the version of *Black's Law Dictionary* at the time of the Agreement's passage is indicative of its plain meaning. That edition defined a "detainer" as a "writ or instrument," which the State argues indicates that a detainer must be in writing.[16] But because the Agreement is subject to a federal construction, we are not persuaded that *Black's Law Dictionary's* definition is controlling. Indeed, the latest edition of *Black's Law Dictionary* has adopted the more recent United States Supreme Court definition of "detainer."[17]

Because the language in the Agreement and the federal cases

---

[12]*State v. State, Employees Assoc.*, 102 Nev. 287, 289, 720 P.2d 697, 698 (1986).

[13]*Gallagher v. City of Las Vegas*, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998).

[14]*Id.* at 599-600, 959 P.2d at 521.

[15]*Webster's Ninth New Collegiate Dictionary* 702 (1985).

[16]*Black's Law Dictionary* 535 (4th ed. 1951).

[17]*Black's Law Dictionary* 449 (6th ed. 1990) (a "[r]equest filed by criminal justice agency with institution in which prisoner is incarcerated, asking institution either to hold prisoner for agency or to notify agency when release of prisoner is imminent").

construing it are ambiguous as to whether a writing is required, we must consider the intent surrounding the Agreement. As expressly provided for in Article I of the Agreement, "the purpose of this agreement [is] to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, information or complaints."

In *State v. Bronkema*,[18] the Idaho Court of Appeals relied on this express purpose in determining that a telephone call from the state with custody of a prisoner to a state with a warrant for the prisoner did not constitute a detainer. In holding that a detainer had to be in writing, the court convincingly addressed some of the concerns attached to orally communicating a detainer:

> Orderly disposition of untried charges against a prisoner is rendered more difficult if an oral communication is permitted to constitute a detainer. In the first instance, such a communication would not permit, in most cases, the official having custody of the prisoner to "promptly inform [the prisoner] of the source and *contents* of any detainer lodged against him," as required by the Agreement. It would be very difficult, absent reduction of the oral communication to writing, to accurately convey the contents of the detainer to the prisoner, i.e., the charges or indictments upon which it is based.
>
> And in the final instance, an oral communication does not provide certainty or permit objective verification of a detainer and its bases by the sending state. . . . The sending state should not be placed in the position of having to infer intent on the part of the receiving state to file the detainer from uncertain oral communications. To hold otherwise could result in denial of important rehabilitative benefits to the prisoner[, one of the activities the Agreement was designed to avoid,] based on the mere inference that another state had a prosecutorial interest in the prisoner.[19]

The Idaho court therefore concluded that for purposes of the Agreement, a detainer "entails some form of written communication initiated by the receiving state . . . which is filed or lodged with the custodial or sending state . . . requesting the sending state to notify the receiving state of the prisoner's imminent release from custody, or to hold the prisoner after his release for the receiving state."[20]

---

[18]706 P.2d 100 (Idaho Ct. App. 1985).

[19]*Id.* at 103-04 (citations omitted).

[20]*Id.* at 103 (emphases omitted).

Although Theis argues that *Bronkema* is distinguishable because the communication in his case was initiated by Nevada, the state seeking to detain him, and involved a clear request to be added to the Elko County detainer, we conclude that the rationale announced in *Bronkema* for requiring detainers to be written is convincing. Therefore, despite Washoe County initiating and orally communicating a clear desire to Idaho in this case, the general concern that oral communications will not be "expeditiously and accurately" received and processed is too great to not require a writing.

Accordingly, we conclude that the phone call from Washoe County to Idaho in March of 1999 did not constitute a "detainer" within the meaning of the Agreement.[21]

## CONCLUSION

We conclude that in order to best effectuate the purpose of the Agreement, a detainer must be a written request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent.

Accordingly, because there was no proof of a written detainer specifically directed to the Idaho State Correctional Institution, we affirm the district court's denial of Theis's motion to dismiss.

---

[21]Although not necessary to our decision, we note that even if the phone call from Washoe County did constitute a valid detainer, Theis's February 25, 1999, request for final disposition would still not have triggered the 180-day disposition period of Article III(a) or the dismissal requirement of Article III(d), which only apply to complaints "on the basis of which detainers have been lodged." Specifically, Theis's request predated the phone call. Therefore, at the time Theis's request for final disposition was received, Washoe County's complaint was not one "on the basis of which" a detainer had been lodged, and thus it was not affected by Theis's request.